NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0185n.06

No. 11-2135

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Feb 20, 2013***

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH P. STANISLAW, individually and d/b/a Grand Auto Plaza, and LARRAINE M. STANISLAW, | ) ) ) | |
| Plaintiffs/Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| THETFORD TOWNSHIP, a Michigan Municipal Corporation, LUTHER HATCHETT, Individually and in his Official Capacity as Thetford Township Supervisor, MARC ANGUS, individually and in his Official Capacity as Thetford Township Building Inspector, and THOMAS KULCHER, individually and in his official capacity as Thetford Township Code Enforcement Officer, jointly and severally, | ) ) ) ) ) ) ) ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants/Appellees. | ) ) ) ) ) | |

Before:       BOGGS and WHITE, Circuit Judges; BLACK, District Judge.[*]

BOGGS, Circuit Judge.  For over two decades, Joseph and Larraine Stanislaw operated a used-car dealership in Thetford Township, Genessee County, Michigan.  The Township received complaints from neighbors about the Stanislaws' lot not conforming with local zoning ordinances.  In 2004, Michigan passed a law that required local municipalities to certify that a car dealership complies with all zoning laws before its dealership license can be renewed.  After numerous

---

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

discussions and an inspection of the lot, the Township Supervisor of Thetford County declined to sign the form. A month prior to the Supervisor's decision, the Township's Building Inspector forwarded his report about the Stanislaws' failure to maintain a fence to the Zoning Board of Appeals (ZBA), which "accept[ed]" the report.

Without first appealing to the ZBA or the Michigan state courts, plaintiffs filed suit directly in federal district court, claiming that defendants violated their constitutional rights and seeking damages. The district court granted summary judgment in favor of defendants on all counts, holding that plaintiffs were barred from asserting takings, procedural-due-process, substantive-due-process, and equal-protection claims. We affirm.

# I

Plaintiffs Joseph and Larraine Stanislaw, husband and wife, owned a car dealership in Theftford Township. They purchased the property in May 1983. In July 1983, plaintiffs submitted to the Thetford Township Supervisor a "vehicle dealer supplemental location license application" to sell used cars. Although the application required "zoning approval" and the site was not properly zoned, then-Supervisor Harold Brady (now deceased) signed the license, for reasons that are not clear. Next to his signature, Brady wrote a partially legible comment that read in part: "Sales in building but not . . . ."

In August 1983, plaintiffs filed a petition for a site-plan review, seeking permission to perform "auto sales and service." At the time, the local zoning ordinance required that all automobile sales be conducted inside an enclosure—this may be what Brady's illegible comment was meant to address. The planning commission approved plaintiffs' plan, stipulating that they

would have to construct a "proper enclosure" within thirty days. In April 1984, Daniel Case, a neighbor, complained about plaintiffs' property. Mr. Stanislaw appeared before the Planning Commission in May and again in August, when a site plan was approved that included a fence to enclose the cars and equipment on the lot.

Thetford Township approved a new zoning ordinance in 1989 concerning the sale of cars. Plaintiffs' business was grandfathered as a previously-approved "non-conforming use." However, in September 1993, plaintiffs sought to obtain licenses under the name of their company, Grand Auto Plaza. Plaintiffs submitted a "Vehicle Dealer License Application Change of Name and/or Address" form to the Township. That form required the "signature of zoning authority" in a section labeled "Zoning Approval." It is questionable whether the document was signed by the Township Supervisor. In the block labeled "signature of zoning authority," someone—perhaps Brady—wrote "Thetford Twp." In the "name and title of zoning authority" block, someone wrote in print "Harold L. Brady." Michigan apparently accepted the form as submitted, as the state issued the licenses.

On September 26, 2005, Case—now a member of the Thetford Township ZBA—wrote a letter to the Township complaining that plaintiffs' property was a junk yard. The previous year, Michigan passed an act that required that car dealers must obtain "written verification from the appropriate governing or zoning authority that the established place of business meets all applicable municipal and zoning requirements" prior to the renewal of their state vehicle-dealer licenses. Mich. Comp. Laws § 257.248. In early December 2005, Mrs. Stanislaw submitted to the Township a form to renew the dealership's license. Mark Angus, the Thetford Township Building Inspector, indicated that he would have to inspect the property before the form could be signed.

Angus denied the applications on December 12, 2005, finding that the fence was in poor condition and that the property was an "auto graveyard." Plaintiffs state they do not know whether Angus ever actually inspected the property. After Angus denied the application, he forwarded the form to the ZBA, which "accept[ed]" the document at a December 21, 2005, meeting.

Even though the municipality did not certify that the site was in compliance, plaintiffs submitted the license-renewal form to Michigan. The state informed plaintiffs that they would need to remedy their incomplete application by January 31, 2006. Plaintiffs state that on January 24, 2006, they met with Angus, Luther Hatchett, the Township Supervisor, and Police Chief Thomas Kulcher. Mrs. Stanislaw testified that she and her husband were told that the Township would revisit the issue if they restored the fence and moved the cars out of view. After some discussion with local officials, Angus wrote a letter to the state asking for an extension for the Stanislaws to give them more time to comply with the zoning ordinances. After the extension, Mr. Stanislaw made some repairs. Hatchett sent Chief Kulcher to inspect the property. Kulcher, who observed that there were still vehicles sitting out in the front of the property, told Hatchett that it had not been brought up to standards. Hatchett thus refused to sign the license-approval form.

On February 9, 2006, the Planning Commission passed a motion that required plaintiffs to construct a six-foot tall fence on the property. Chief Kulcher would determine the length of the fence. Plaintiffs assert that they obtained forms from the Township to appeal the February 9, 2006, decision to the ZBA. Plaintiffs claim that Kulcher told them that they could not appeal the Commission's decision to the ZBA. Kulcher denied saying this, testifying that he did not know

anything about the appeal procedures. Rather than appealing to the state courts, plaintiffs filed this action in federal district court.

**II**

The district court determined that it lacked subject-matter jurisdiction to consider plaintiffs' claim that defendants' decisions constituted a taking. Citing *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985), the district court held that plaintiffs did not "first give the state court an opportunity to adjudicate the issue of just compensation before seeking a declaration from a federal court that the State has failed to provide just compensation." District Ct. Op. at 7–8. Concluding that plaintiffs never sought compensation in state court, the district court granted judgment as a matter of law.

The district court also found that plaintiffs' procedural-due-process, substantive-due-process, and equal-protection claims are "are ancillary to the unripe takings claim, in that 'resolution of the takings claim was necessary in order to address the attendant process-related issues.'" District Ct. Op. at 8 (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 571 (6th Cir. 2008)). The court held that, without a determination that a property interest was violated, these claims were foreclosed. Judgment was entered for defendants on all counts.

**III**

**A**

Plaintiffs never appealed Angus's December 12, 2005, decision denying the approval of their site, the December 21, 2005, vote by the ZBA accepting Angus's report, or the February 9, 2006, decision by the ZBA ordering them to build a fence. Plaintiffs never sought any remedies in state

court. They attempt to explain their failure to appeal the December 21, 2005, vote in two ways. First, they claim that Chief Kulcher told them that they could not appeal the decision of the ZBA. Even assuming that Kulcher gave plaintiffs incorrect information, which is disputed, the Stanislaws provide no case law to support their contention that Kulcher's representation would have excused their failure to appeal from the ZBA decision. Kulcher was the Chief of Police, not an attorney or someone intimately familiar with the intricacies of zoning appellate procedures. He simply had been asked by the Supervisor to check if the property had been brought into conformance with the local law. In contrast, the Stanislaws were quite familiar with the mechanics of the zoning process, as they had navigated the local zoning regulations on their property for nearly two decades. In fact, even after the inspection by Kulcher, the Stanislaws engaged in further discussions with the Township.

Second, plaintiffs assert that Angus "took this matter to the Thetford Township Zoning Board of Appeals without the knowledge, notice or presence of the Stanislaws." The minutes of the December 21, 2005, ZBA meeting state that a motion was made by William Schipper, and seconded by Rollin Swick, that the "Zoning Board of Appeals accepts the report of Grand Auto Plaza as presented by Building Inspector, Marc Angus." Swick, Garl, Congdon, and Schipper voted in favor. Dan Case, the neighbor who had made the original complaint, abstained. The "[m]otion carried."

All the record reflects is that the ZBA "accept[ed]" the report for purposes of determining whether to certify the Michigan license-renewal form. Other motions made on that date that were voted on referred to specific actions, such as "grant[ing] permission to build a barn," or "grant[ing] a renewal for one year," or "grant[ing] a sign variance." Angus's report was simply "accept[ed]." Nothing was granted or denied.

**B**

Plaintiffs never appealed any final decision of the Planning Commission or the ZBA through proper state channels. We agree with the district court that at its heart, plaintiffs' claim concerned a taking without just compensation. Plaintiffs' takings claims are barred by *Williamson County*. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty.*, 473 U.S. at 195.

On appeal, plaintiffs claim that *Williamson County* is not a bar because this is not a takings case. "The Stanislaws' claim is for the ability to be left alone to continue to do what they have been validly doing to earn a living for decades. Theirs was not a taking of any real estate, but instead a taking of their business license; thier [*sic*] personal property." This claim is legally incorrect and not supported by the record.

Plaintiffs' complaint is quite nebulous as to what they really challenge, but at a minimum it encompasses some sort of ill-defined Fifth Amendment takings claim. Counts I, II, and III attacked actions that allegedly resulted in the deprivation of property interests under the Fourteenth Amendment, violations of the substantive component of the Fourteenth Amendment, and violations of their right to equal protection, respectively. Count IV claimed that defendants violated their "well-established constitutional rights under the Fifth and Fourteenth Amendments." Count V concerned actions that violated their "rights under the Fifth Amendment to the United States Constitution" and specifically mentioned the "wrongful takings of the Defendants."

Defendants here were state actors, rather than federal actors. The only conceivable reason that the Fifth Amendment would be cited is to raise a takings challenge through the principles of reverse incorporation. Plaintiffs are simply wrong that they did not raise a takings challenge, even if they attempt to abandon it now in light of the *Williamson County* bar. Plaintiffs failed to exhaust all remedies in state court, and the taking claim is not ripe for federal review.

**IV**

**A**

Plaintiffs' remaining claims of violations of procedural and substantive due process, as well as equal protection, are somewhat jumbled and poorly explained. First, with respect to procedural due process, plaintiffs claim that defendants' decision to "summarily terminate the Stanislaws' ability to conduct business is precisely why they assert the procedural due process claims that they do." In this circuit, a "procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991). However, the Stanislaws' claim is not a "pure claim of procedural due process, but instead involves several constitutional claims"—procedural due process, substantive due process, and equal protection. *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 159 (6th Cir. 1992). The Stansislaws' procedural-due-process claim, which is inextricably linked with its takings claim, is subject to the exhaustion requirements of *Williamson*.

Plaintiffs cite no case law to suggest that a hearing is required with respect to a decision to sign or not sign a form required for a state license. Especially when the reason behind the refusal

to sign the form was plaintiffs' long-standing failure to bring their lot into compliance—they had numerous hearings and opportunities over the course of two decades to remedy their non-conforming use of the property.

Plaintiffs claim that an appeal to the ZBA from the Commission would have been "fruitless" as "literally nothing was available in the ZBA record in support of the Stanislaws." Indeed, the ZBA record had only a single sentence stating that Angus's report was "accept[ed]." Assuming that plaintiffs had in fact appealed to state court and that the state court determined that there was a constitutionally-deficient lack of process, a remand would be virtually assured. Even if a decision was made without appropriate process, the correct recourse is initially to the state courts, not directly to the federal courts. Plaintiffs did not show that the Michigan courts lacked the ability to adjudicate this claim in accordance with principles of due process. Their fate was not "sealed by the ZBA." Zoning boards are fallible, not final. Summary judgment was appropriate on the procedural-due-process claim.

**B**

Beyond a section heading labeled "substantive due process," there is no cohesive argument with respect to substantive due process, though it seems to relate to defendants' alleged deprivation of the Stanislaws' right to earn a living. The district court stated that plaintiffs' substantive-due-process claim was based on the "same set of facts" as their procedural-due-process claim. "Supreme Court authority subsequent to *Williamson County* strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff." *Warren v. City of Athens*,

411 F.3d 697, 706–07 (6th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)).  We agree with the district court.  The substantive-due-process claim was without merit.

## C

Citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), plaintiffs attempt to state a class-of-one claim, asserting that while Angus "routinely approved every other request for licensure by every other business that sought it from him in Thetford Township," he denied the Stanislaws' application.  Plaintiffs' *Olech* claim is woefully incomplete, as they fail to identify any similarly situated businesses who were actually treated differently.  Judgment on this claim was appropriate as well.

## V

The judgment of the district court is AFFIRMED.