NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0044n.06

Case Nos. 22-1919/1939

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 28, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| MICHAEL PUNG, Personal Representative of the Estate of Timothy Scott Pung, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> PETER M KOPKE, et al., <br><br> Defendants - Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN AND WESTERN DISTRICT OF MICHIGAN <br><br> O P I N I O N |

BEFORE: McKEAGUE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**McKEAGUE, Circuit Judge.** A Michigan resident can reduce their property tax burden by exempting their primary residence from local school district taxes. Timothy Pung's primary residence (the "Pung property") received this exemption for many years. But after he died in 2004, Isabella County officials denied this exemption, causing an unpaid tax debt which led to the foreclosure of the property. Michael Pung—the representative of Timothy Pung's estate—sued Isabella County and several state officials claiming that the events leading up to the foreclosure sale and the sale itself violated the Fifth and Eighth Amendments. He also claims that defendants denied him equal protection and conspired to deprive him of due process. The district court granted Pung partial summary judgment on his Fifth Amendment claim. But the court either dismissed or granted summary judgment to the defendants on his other claims. We AFFIRM.

**I.**

**A. Factual Background**

Michigan law provides that a property owner may claim an exemption from local school district taxes if the owner occupies the property as his or her principal residence. Mich. Comp. Laws § 211.7cc(1). This exemption is called the Principal Residence Exemption (PRE), and an owner can claim it by "filing an affidavit . . . with the local tax collecting unit in which the property is located." *Id.* at § 211.7cc(2). The local tax collecting unit's assessor determines whether the property owner is eligible for the PRE. *Id.* at § 211.7cc(6). If an assessor denies a PRE, they must provide reasons for the denial in writing to the owner as well as the county treasurer. *Id.*

This appeal revolves around the Pung property in Union Township, Isabella County, Michigan. Timothy Pung, who passed away in 2004, previously owned the Pung property. Appellant Michael Pung (Timothy's uncle) is the personal representative of the resulting estate. Timothy filed an affidavit for a PRE in 1994, and the PRE was still active when Timothy died. Timothy was survived by his wife Donnamarie, and two children Katie and Marc. Upon Timothy's passing, Donnamarie continued to live in the residence until her death in 2008. After her death, Marc continued to reside there.

In March 2010, Appellee Patricia DePriest—the Union Township tax assessor— retroactively denied the PRE for the Pung property for tax years 2007, 2008, and 2009. DePriest was unsure who owned the property after Timothy's death, as "there was no other person on the deed or on the [PRE] affidavit" and Union Township representatives "could never find anyone at the address." DePriest Dep., E.D. R. 18-12, PageID 447. DePriest believed that the law required any new owner of a residence to file an affidavit to claim the PRE. Because there was no affidavit from Timothy Pung's heirs on file, she denied the PRE for those three years. She did not apply the

PRE to the property for the 2010 or 2011 tax years. The Pungs appealed DePriest's denial regarding the 2007, 2008, and 2009 tax years to the Michigan Tax Tribunal. In the meantime, they refused to pay the extra taxes related to DePriest's denial of the PRE for the 2010 and 2011 tax years.

The Pungs successfully challenged DePriest's retroactive denial in the Michigan Tax Tribunal. After a hearing, the Tribunal granted the PRE to the Pung property. The Tribunal explained that Timothy Pung's estate still owned the property, and that Donnamarie and Marc were beneficiaries and thus part owners of the estate. Thus, Donnamarie and Marc were not new owners. The Tribunal also found that Donnamarie and Marc resided continuously at the property after Timothy's death. Since a property owner is entitled to the PRE as long as the property is the owner's principal residence, the Tribunal held that the Pung property "qualified to receive [a PRE] under MCL 211.7cc for the tax years at issue." Tribunal Order, E.D. R. 8-4 PageID 84. During the hearing the presiding ALJ of the Tribunal said that the Pungs did not need a new affidavit—expressly rejecting DePriest's reading of the law. The Tribunal entered the order in March 2012. Curiously, the written order did not address whether the Pungs had to file a new affidavit to claim the PRE.

In June 2012, Appellee Steven Pickens—the Isabella County Treasurer—initiated foreclosure proceedings related to the unpaid balance on the 2010 and 2011 taxes. Despite having reservations, DePriest complied with the ALJ's oral representations and granted the 2012 PRE in December 2012. But DePriest did not let the matter rest. Notwithstanding the ALJ's statements at the hearing, she was steadfast in her belief that every subsequent owner of a property was required to file a new affidavit to claim the PRE. She reached out to Appellee Peter Kopke—former Chief Clerk of the Michigan Tax Tribunal—who confirmed that she had to deny the PRE for the Pung property because a new affidavit was never filed.

On February 4, 2013, the Pungs moved to dismiss the foreclosure proceeding based on the tax tribunal's ruling. On February 7, the County dropped the Pung property from its foreclosure petition and asked the court to deny as moot the Pungs' motion to dismiss. On that same day, DePriest revoked the Pung property's PRE for the 2012 tax year. On February 15, the circuit court rejected the County's mootness arguments and held that the Tax Tribunal's ruling applied to the 2010 and 2011 tax years and declared the Pungs taxes fully paid. Thus, it dismissed the County's foreclosure petition against the Pung property. The Michigan Court of Appeals affirmed that ruling in 2015.

The record is unclear whether Pung received written notice of the 2012 PRE denial as required under Michigan law. DePriest claims that she sent a notice letter as a matter of standard practice; Pung claims that he never received a letter. Pung nevertheless received verbal notice of the revocation when he was trying to pay his tax bill in late February 2013. Pung immediately wrote the Tax Tribunal requesting the enforcement of its 2012 order for the years 2010–12. Kopke refused, stating that the Tax Tribunal order only applied to years 2007–09. Pung wrote again, reiterating his demand to enforce the Tribunal order. Kopke replied that he could not address Pung's demand and Pung should have filed an official appeal with the Tribunal or the Union Township Board of Review.

Pickens was aware of the controversy surrounding the Pung property. When DePriest denied the PRE for 2012, which resulted in additional property taxes, Pung's attorney had asked Pickens to "abate" the taxes. Since Pickens had no power to do so, he reached out to the Tax Tribunal to get clarification on the impact of the Tax Tribunal's order. Pickens also recalls discussing the issue with Kopke at a Treasurer's Association conference; according to Pickens, Kopke said that Pickens was supposed "to do exactly what the order said, no more, no less."

Pickens Dep., E.D. R. 18-13, PageID 486–87. Kopke denies ever having met or spoken with DePriest or Pickens.

Eventually, Pung refused to pay the balance tax caused by the removal of the PRE for 2012. This led to a $2,241.93 unpaid tax bill, and Pickens initiated foreclosure proceedings for tax delinquency in June 2014. Pung failed to appear at the foreclosure proceedings. The county circuit court entered its judgment of foreclosure in February 2015—ten days after the Michigan Court of Appeals affirmed the judgment regarding the Pungs' 2010 and 2011 taxes. In May 2015, Pung moved to set aside the foreclosure in Isabella County Circuit Court—asserting that he first heard about the foreclosure through an April 30 notice that the foreclosure had been finalized. Pung claimed that Isabella County violated his due process rights because he never received notice of the foreclosure. The circuit court set aside the foreclosure, but the Michigan Court of Appeals reversed and remanded for entry of the foreclosure. Subsequently, the foreclosure concluded, and the property sold for $76,008.00 at public auction. The county retained all the proceeds from the sale.

**B. Procedural History**

After the foreclosure judgment, Pung initiated this lawsuit in the Western District of Michigan. Pung claimed that Kopke, Pickens, and DePriest conspired to violate his due process rights under the Fourteenth Amendment. After the foreclosure sale, he added claims that Pickens and Isabella County imposed excessive fines under the Eighth Amendment and committed a Fifth Amendment taking when they refused to pay him the "entire value of the Pung Property and/or the value of the surplus equity in Pung Property" after the foreclosure sale. Second Amended Compl., W.D. R. 65, PageID 519, 521. Pung also brought a class-of-one Equal Protection claim against all defendants. Defendants moved to dismiss all claims against them. Pung moved for summary

judgment on his Fifth Amendment takings and Eighth Amendment excessive fines claim against Pickens and Isabella County.

The district court dismissed Kopke from the proceedings because Pung failed to state a plausible claim against him. The court denied the remaining motions to dismiss and granted Pung's motion for summary judgment on the Fifth Amendment Takings claim. The court left open the question of damages. Since the court ruled in favor of Pung on the Fifth Amendment Takings claim, it denied the Eighth Amendment Excessive Fines claim as moot. The district court then transferred the case to the Eastern District of Michigan because "[t]he convenience of the parties and witnesses" favored the transfer.

In the Eastern District, Pung renewed his motion for summary judgment on his Fifth Amendment Takings and Eighth Amendment Excessive Fines claims against Pickens and Isabella County. The court granted summary judgment in part and held that Pung was entitled to the surplus proceeds from the tax foreclosure sale plus interest. But the court denied Pung's claim for the loss in equity based on the property's fair market value.

The remaining defendants moved for summary judgment on the conspiracy to violate due process and equal protection class-of-one claims. The court granted both motions. The court held that the conspiracy claim was collaterally estopped because Pung already litigated a due process claim in state court. The court also held that the equal protection claim failed because Pung did not identify similarly situated parties that were treated differently. This appeal followed.

## II.

This appeal concerns both the foreclosure sale and the 2012 PRE denial. Regarding the foreclosure, Pung argues that the district court's award of surplus proceeds violated the Fifth Amendment Takings and Eighth Amendment Excessive Fines clause. Isabella County argues that

the district court improperly awarded Pung interest on the surplus proceeds. Regarding the PRE denial, Pung claims that the defendants conspired to deny him due process and DePriest violated his equal protection rights. We review all claims de novo. *Wilmington Trust Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017); *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023) (dismissals on the pleadings and summary judgment are subject to de novo review).

A.      **Fifth Amendment Takings Claim**

On appeal, Pung argues that the Fifth Amendment entitles him to an award based on the full fair market value of the property and not merely the surplus proceeds from the foreclosure sale. He states that just compensation under the Fifth Amendment requires that "[t]he owner of taken property . . . be put in the same position monetarily as [he] would have occupied if his property had not been taken." Appellant's Br. 22–23. He claims that Isabella County took $192,158.07, the difference between the fair market value of the property ($194,400) and his tax delinquency ($2,241.93). The district court held that Pung was only entitled to the tax foreclosure proceeds that exceeded his tax debt.

The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The government commits a Fifth Amendment taking when it retains the proceeds from a tax foreclosure sale that exceed the delinquent property tax debt. *Freed v. Thomas*, 81 F.4th 655, 658–59 (6th Cir. 2023). In *Freed*, a county foreclosed on Freed's property to satisfy a $1,100 tax debt, sold it at public auction for $42,000, and retained the full sale price. *Id.* at 657. We found that Freed's Fifth Amendment rights were violated and awarded him the difference between the foreclosure sale amount and his tax debt, plus interest. *Id.* at 658. Freed argued that he was entitled to an additional $56,800 because the property's fair market value was $98,800, even though it sold at auction for

only $42,000. *Id.* at 658. We disagreed and stated that "a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is [not] entitled to recoup the fair market value of the property." *Id.* Instead, we held that any surplus owed to the owner is determined by the foreclosure sale price. *Id.* After all, "the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure." *Id.* at 659 (citing *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548–49 (1994)). So "when a municipality sells foreclosed property at a properly conducted public auction," the owner is entitled to "the amount of the sale above his debt and no more." *Bowles v. Sabree*, 121 F.4th 539, 551 (6th Cir. 2024) (quoting *Freed*, 81 F.4th at 659).

So too here. Pung's property was sold at a tax auction for only $76,008.00. Pung's tax delinquency was $2,241.93. The district court awarded Pung $73,767.07,[1] which it believed to be the difference between the tax delinquency and foreclosure sale price. The court also awarded any interest accrued on this amount from the time of the sale. Notwithstanding a minor error in its calculations, the district court ruled consistently with our holding in *Freed*.

In its cross-appeal, Isabella County argues that Pung is not entitled to any interest on the surplus proceeds from the tax foreclosure sale. It states that any interest award "imposes a loss upon the public that arises entirely from the failures of the delinquent taxpayer." Isabella Cnty. Br. 49. Yet a property owner's right to full compensation arises at the time of the taking. *Knick v. Township of Scott*, 588 U.S. 180, 190 (2019). And the property owner with a "valid takings claim is entitled to compensation as if it had been 'paid contemporaneously with the taking.'" *Id.*

---

[1] The district court's order contains a minor arithmetical error. Since the property was sold for $76,008.00, subtracting the tax delinquency of $2,241.93 yields a total of $73,766.07—not $73,767.07. It might seem trivial to quibble over a single dollar. But "forcing [a defendant] to pay one dollar—something he would not otherwise have done" is still an exercise of the judicial power. *See Farrar v, Hobby*, 506 U.S. 103, 116 (1992) (O'Connor, J., concurring). So it is best to be precise.

(quoting *Jacobs v. United States*, 290 U.S. 13, 17 (1933)). This is accomplished by compensating the property owner for "the total value of the property when taken, plus interest from that time." *Id.* This requirement is independent of any compensation remedy available under state law. *Id.* at 191.

A Fifth Amendment taking occurs when a county takes absolute title of the property. *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022). It follows that a county must pay a property owner interest on surplus proceeds from a tax foreclosure sale to ensure that the owner is compensated "contemporaneously with the taking." *See Jacobs*, 290 U.S. at 17. We held as much in *Freed* when we affirmed the district court's ruling that Gratiot County owed Freed the difference between the foreclosure sale amount and his debt, plus interest. 81 F.4th at 658–59. We have no reason to deviate from this precedent here and affirm the district court's award of interest.

B.      **Eighth Amendment Excessive Fines Claim**

Pung's property was sold at a tax auction for approximately $76,008. Pung claims that the market value of the property was $194,400, and the approximate $118,000 loss in equity amounted to an excessive fine in violation of the Eighth Amendment. Since the district court resolved the Fifth Amendment Takings claim in his favor and granted him the surplus proceeds from the foreclosure sale, the court dismissed Pung's Eighth Amendment claim as moot. On appeal, Pung argues that because he was only awarded surplus proceeds under the Fifth Amendment, the court should have addressed his Eighth Amendment claim based on the loss in equity.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). In the property context, the Supreme Court has traditionally applied the Excessive Fines Clause to statutes that impose property forfeiture in addition to other criminal punishments. *See, e.g.*, *United States v. Bajakajian*, 524 U.S. 321, 325, 328 (1998); *Austin*, 509 U.S. at 604.

More recently, the Court declined to reach the Eighth Amendment's implications in the context of tax delinquency foreclosure proceedings. *Tyler*, 598 U.S. at 647–48 (deeming it unnecessary to reach the Excessive Fines claim under the Eighth Amendment because the Fifth Amendment Takings Clause fully remedied the harm). Justice Gorsuch, in his concurring opinion, argued that the tax-forfeiture scheme under review might implicate the Eighth Amendment's Excessive Fines Clause. He argued that even though the scheme only imposed economic penalties "to deter willful noncompliance with the law" such penalties were still fines and the Constitution deems that "[t]hey cannot be excessive." *Id.* at 649–50 (Gorsuch, J., concurring).

We have not subjected the GPTA to similar Eighth Amendment scrutiny. The Michigan Supreme Court has held that the GPTA does "not necessarily punish property owners for failing to pay their property taxes"; because "[i]ts aim is to encourage the timely payment of property taxes." *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434, 448 (Mich. 2020). Based on this reasoning, we have held that the GPTA's tax forfeiture scheme does not fall within the ambit of the Eighth Amendment. *Freed*, 81 F.4th at 659; *Hall*, 51 F.4th at 196–97. Accordingly, we are bound by precedent and hold that there was no Eighth Amendment violation. *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (holding that a prior circuit "decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

C.      **Equal Protection Class-of-One Claim**

Pung claims defendants violated his equal protection rights because they treated him differently than other property owners when they denied the PRE. The district court granted summary judgment to the defendants because Pung failed to identify similarly situated parties who received the PRE. On appeal, Pung argues that DePriest failed to identify "*literally* anyone" else who was denied the PRE when they had a valid affidavit in place before the owner's death but failed to file a new affidavit upon the owner's passing. Appellant's Br. 35. He argues that the absence of this evidence shows that he was treated differently than other property owners.

The Fourteenth Amendment's guarantee of the "equal protection of the laws" bars state action that "either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). Claims advanced under the third category are referred to as a class-of-one claim. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012). To prevail on a class-of-one claim, a plaintiff must show that (1) the state "intentionally treated" them "differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). A class-of-one claim fails if the plaintiff is unable to identify any similarly situated parties that were treated differently. *Stanislaw v. Thetford Township*, 515 F. App'x 501, 507 (6th Cir. 2024).

Our analysis begins and ends with the first prong. To succeed on a class-of-one claim, Pung bears the burden of showing that DePriest did not deny an exemption for other property owners who failed to file a new affidavit after the original owner passed away. Pung has not done so. The fact that DePriest was unable to identify another instance where she denied an exemption in similar

11

situations does not relieve Pung of his burden. So, we affirm the district court's grant of summary judgment on this claim.

###### D.     Conspiracy to Deny Due Process

Pung claims that DePriest, Pickens, and Kopke conspired to withhold the PRE from the Pung Estate without due process. He argues that defendants denied him due process when DePriest failed to provide written notice of the 2012 PRE denial as required under Michigan law. He states that Pung's repeated victories in state courts "rankled" the defendants, and to get back at him they imposed an illegal tax resulting in the foreclosure of his property. Appellant's Br. 40–41.

The district court dismissed the claim against Kopke for failure to state a claim upon which relief can be granted. The court explained that Kopke's role in the alleged conspiracy was "too skeletal and attenuated" to support the claim against him. The court allowed the claim to proceed against DePriest and Pickens. But on summary judgment, the court concluded that Pung was collaterally estopped from bringing this claim because the Michigan state courts had already "squarely addressed the issue of whether Plaintiff's constitutional due process rights were violated when [defendants] foreclosed on the Property." *Pung v. County of Isabella*, No. 20-13113, 2022 WL 4586121, at *4 (E.D. Mich. Sept. 29, 2022). The court held that it was bound by the state court decision because "[a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Id.* (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

To establish a conspiracy under § 1983, Pung must show that DePriest, Kopke, and Pickens (1) had a "single plan"; (2) shared the objective to deprive Pung of his constitutional rights; and (3) committed an overt act. *Revis v. Meldum*, 489 F.3d 273, 290 (6th Cir. 2007). The agreement between the defendants need not be express and they need not know all the details of the illegal

plan. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) ("Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." (alterations in original) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). Pung may also rely on circumstantial evidence to establish the presence of an agreement among the defendants, but such evidence may fail if the alleged conduct "is just as consistent with independent conduct as it is with a conspiracy." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).

The district court dismissed the claim against Kopke on the pleadings. To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Such factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). And a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Such plausibility requires something more than the "sheer possibility that a defendant has acted unlawfully." *Id.*

Pung's complaint against Kopke does not clear this threshold pleading requirement. Pung's claim against Kopke rests solely on a phone conversation between Kopke and DePriest that allegedly led to the due process violation.[2] The alleged facts merely show that DePriest tried to understand whether the Tax Tribunal's order applied to the 2012 tax year and sought Kopke's advice. A claim that Kopke conspired to deprive Pung of due process is not "plausible" on such a

---

[2] As noted above, Kopke and Pickens may have discussed the Tax Tribunal order during a Treasurer's Association conference. Pung does not reference this fact in his complaint, and in any case, it does not alter the analysis of whether the district court properly dismissed the claims against Kopke.

thin record. Indeed, Pung's counsel admitted that it was difficult to explain the extent of Kopke's role in the entire process. As such, Pung has failed to state a plausible claim against Kopke and the district court was justified in dismissing him from the case.

The district court granted DePriest and Pickens's motion for summary judgment, concluding that the claim against them was collaterally estopped. Under Michigan law, collateral estoppel has three elements: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (alteration in original) (footnote omitted) (quoting *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171 n.3 (Mich 1988)). The district court incorrectly found that the first element was satisfied. Pung did not bring a conspiracy to deny due process claim in state court; rather, he only argued that he was denied due process because he did not receive sufficient *notice* of the foreclosure proceedings. *In re Isabella County Treasurer*, 2017 WL 1393854, at \*2. And the Michigan Court of Appeals held that Pung received "constitutionally sufficient" notice and was not "deprived of [his] constitutional right to due process." *Id.* at \*3–4. The state courts did not consider whether DePriest, Pickens, and Kopke *conspired* to deny Pung of due process. Accordingly, the issue was not "actually litigated and determined" and Pung's conspiracy claim is not collaterally estopped. *Monat*, 677 N.W.2d at 845 (quoting *Storey*, 429 N.W.2d 171 n.3).

The question then becomes whether summary judgment is still appropriate, as "this court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court." *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000). Summary judgment is proper when "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)). Courts draw all reasonable inferences in favor of the nonmoving party. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003). But the nonmoving party "must present significant probative evidence" that creates a genuine dispute of material fact. *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023) (internal quotation marks omitted).

Pung falls short of this standard. We acknowledge the irregularity in which the exemption was denied: DePriest initially granted the 2012 exemption before revoking it, and the record is not clear on whether Pung received notice of denial.[3] But while these irregularities may show that DePriest failed at her duties, Pung must identify evidence that the Defendants agreed to a "single plan." *Revis*, 489 F.3d at 290. Here, DePriest's actions were "just as consistent with independent conduct as they were with a conspiracy." *Hensley*, 693 F.3d at 695, *Womack v. Conley*, 595 F. App'x 489, 494 (6th Cir. 2014). Although Pung claims that defendants conspired against him because they were "rankled" or "professionally angry and put off" he does not offer any evidence to support these claims. Appellant's Br. 40, 43, 45. Without such evidence, no reasonable jury could find in his favor.

Although we are sympathetic to Pung's plight, he has not provided any "significant probative evidence" to show that the defendants conspired to deny him due process. *Green Genie, Inc.*, 63 F.4th at 526 (internal quotation marks omitted). He cannot "avoid summary judgment by

---

[3] Regardless of whether Pung received written notice, he could have still approached the Board of Review for a retroactive PRE, that could have prevented the foreclosure. Mich. Comp. Laws § 205.735a.

resorting to speculation, conjecture, or fantasy." *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818 (6th Cir. 2018). Accordingly, we affirm the district court's grant of summary judgment in favor of DePriest and Pickens.

## III.

For the foregoing reasons, we AFFIRM the district court.